George Phegley et al. v. Steamboat David Tatum.

---

GEORGE PHEGLEY *et al.*, Respondents, *v.* STEAMBOAT DAVID TATUM, Appellant.

*Appeal from St. Louis Court of Common Pleas.*

*J. K. Knight*, for respondents.

*Sharp* and *Hayden*, for appellant.

JOHN WILLIAMS, Respondent, *v.* STEAMBOAT DAVID TATUM, Appellant.

*Boats and Vessels—Admiralty.*—A sale of a vessel by order of a court of admiralty is conclusive upon all persons, and divests all liens; but a sale of a steamboat under the statutes of the different States, allowing of the suing of the boat by name, divests only the liens created by the laws of that State. A sale of a steamboat by order of the courts of Illinois will not prevent a citizen of Missouri from enforcing against the boat in the hands of the purchaser the liens created by the laws of this State. (Steamboat Sea Bird v. Beehler, 12 Mo. 570. Affirmed.)

*Jurisdiction.*—The Federal courts have exclusive jurisdiction in all admiralty and maritime matters.

*Appeal from St. Louis Circuit Court.*

*Sharp* and *Hayden*, for appellant.

It is not contended that the records of the justice's court were " records or judicial proceedings," under the act of Congress of 26th May, 1790, though some courts have held this doctrine, (3 Mon. Ky. 62 ; 5 Day, 363,) but that they were competent evidence in connection with the testimony of the witness Saxton as sworn office copies.

All the authorities agree that no informalities, mistakes

30—VOL. XXXIII

or errors can render void the judgment of a court having jurisdiction, where that judgment is collaterally put in evidence. And the effect is the same, provided the court had jurisdiction, whether it were a court of general or limited powers, of record or not of record.

Two elements are essential to give jurisdiction. That both of these elements existed in the present case, appeared from the evidence offered by defendant.

That the justice had jurisdiction of the cause of action, appears from the statutes of Illinois.

That the justice had jurisdiction of the person of the defendant, appears from the seizure of the defendant by the constable, as shown by his return and by the subsequent proceedings. The actions were in substance actions *in rem*; being such, the *res* (not any person whatever) was the defendant. If the *res* was seized in the suit, the court had complete jurisdiction of the defendant.

In considering the effect of the sale, it should be kept in mind that McAllister, who now defends, has, as against the plaintiff, all the priorities. The demand in the first judgment under which he purchased was, 1st, prior in its prosecution, for the suits were commenced before the plaintiffs'; 2d, prior in respect to its class of lien, for it was a mariner's demand, while the plaintiffs' was a material man's, and, 3d, the demand of the plaintiff in the judgment arose before that of the present plaintiff.

Two other material facts should also be borne in mind on this point.

I. That the demand of the plaintiff in this suit fully accrued before the suits in Illinois were commenced.

II. That the laws of Illinois (as mentioned above) allow foreign creditors (i. e. those whose demands originate out of that State, or while the boat is not navigating the waters of that State) to sue under its "boat law," as if they were domestic creditors.

These facts render clearer and more imperative the application to the present suit of the doctrine laid down in the

George Phegley et al. v. Steamboat David Tatum.

cases cited below, that a judicial sale under the "boat act" of Illinois divests such a lien as that of the plaintiff, and gives the purchaser a clear title. (Finney v. Steamboat Fayette, 10 Mo. 612; Steamboat Raritan v. J. G. Smith, 10 Mo. 527; Ritter v. Steamboat Jamestown, 23 Mo. 352.)

The same doctrine has expressly been held to be the law in the courts of the United States; indeed, they have gone further than this, as appears from a decision made by Mr. Justice Nelson of the Supreme Court of the United States, while sitting on his circuit. (2 Blatch. C. C. 427.)

*Rankin* with *Gray*, for respondents.

If all the proceedings in the suits mentioned in the transcripts were formal and entirely regular, yet the sale of the vessel under the laws of Illinois, under which said proceedings were had, did not divest the lien of the plaintiffs' demand. The Illinois statutes afford the remedy by attachment only to those having demands against a vessel which are liens thereon, and a sale thereunder divests only the title of the owner and certain liens conferred by the statute of Illinois. (1 Pur. St. 107.)

It is contended here that the sale under the statutes of Illinois divested the plaintiffs' lien conferred by the laws of Missouri. If this be true, then the effect of such sale has all the force and effect of an admiralty proceeding under the maritime law, where all parties interested are regarded as parties, and all parties interested are allowed to intervene for their respective interests. This proposition cannot be maintained. (Germain v. Steam-tug Indiana, 11 Ill. 536.) In the last case cited, the Supreme Court of Illinois construe their statutes relating to steamboats; they also, in this case, refer to the case of Smith v. Steamboat Raritan, (10 Mo. 527,) and deny the doctrine as applicable to a sale under the Illinois statutes.

In the cases of Smith v. the Raritan, and Finney and others v. the Steamboat Fayette, the court determines that a judicial sale will divest liens, &c; but the court nowhere in

those cases defines what is meant by a judicial sale, or what kind of judicial sale would divest all liens, &c. However, the Supreme Court, in the case of the steamboat Sea Bird v. Beehler, (12 Mo. 570,) reverse those cases, and agree with the decision of the Supreme Court of Illinois in the case previously cited. (Germain v. Steam-tug Indiana, 11 Ill. 536; Clarion v. Moran, 18 Ill. 501.)

Hence the respondents' lien could not be divested by a sale under such proceedings. In the language of the Supreme Court of Illinois, in the cases cited of Germain v. Steam-tug Indiana, "it is contrary to all notions of justice and equity to divest a man of his rights by a proceeding to which he is not a party, and in which he cannot appear and defend them."

BATES, Judge, delivered the opinion of the court.

These cases were argued and submitted to the court together. They were suits to enforce liens under the act concerning boats and vessels. The only questions for consideration arise upon the defence made, which was similar in each case.

Roger C. McAllister, the owner of the boat, set up as a defence that he had bought the boat at a time which was after the liens in these cases had accrued, and before the boat was seized in these cases; that his purchase was made at a constable's sale, in the State of Illinois, authorized by by a proceeding against the boat under the boat law of that State, and that the liens in this State were thereby discharged.

The court below did not sustain the defence, but gave judgment against the boat.

Several questions were presented and argued in this court as to the regularity of the proceedings under which the boat was sold in Illinois; but in the view which we take of the case, it is not necessary to pass upon these questions. This case was argued, upon the part of the appellant, upon the assumption that the liens created by the statute of this State were "maritime liens." We do not understand them to be such in the strict meaning of that term. The *statute of*

Missouri has no extraterritorial operation. It was designed to afford a speedy and convenient remedy to our citizens, and to such others only as are engaged in trade within our jurisdiction at the time of their contract. It does not conflict with the general maritime law, nor is it in aid of that law, but is a separate, distinct and peculiar provision for local objects.

This court has on many occasions considered questions arising under the boat law of the State, which has been materially altered at different times.

Much reliance was placed by the appellant upon the case of Finney, Lee & Co. v. Steamboat Fayette, 10 Mo. 612, which was a case very similar in its facts to the present case, and the court there stated that this case is similar in principle to that of the Steamboat Raritan v. Smith, decided at the present term of this court. It was there determined that "the rules of the maritime laws were, in proceedings against steamboats, to govern, when there was a failure of statutory regulations. Maritime liens, in respect to the mode in which they may be discharged, vary from other liens. A judicial sale will divest them in whatever jurisdiction it may be decreed."

It will be observed that this decision is based entirely upon the determination attained in the case of the Steamboat Raritan v. Smith, and upon examining that case we find that the court placed its decision upon the necessity of supplying the defects in the then existing law, and a supposition that the General Assembly, in borrowing a remedy from the maritime law, would expect the courts to look to that law for principles of decision in questions not provided for by the statute. The opinion then goes on to state that maritime liens could not be divested by a private sale, but that "if a judicial sale was ordered and made, the purchaser under that sale took the vessel, freed from all liens." This is true of a judicial sale ordered by competent authority, that is, by a court having maritime jurisdiction, and in respect to maritime liens; and it was in reference to such authority and

such liens that the language quoted was used, and the court having, because of the defects in the law, to resort to the maritime law for principles of decision, adopted that principle, as applicable to cases arising under the "boat laws" of Illinois and Missouri; but as the defects which made such resort necessary have been cured by subsequent legislation, the principle is no longer applicable, and accordingly we find that in the subsequent case of the Steamboat Sea Bird v. Beehler, 12 Mo. 570, Judge Napton, in delivering the opinion of the court, says that "the opinion of this court in the two cases of the Steamboat Raritan v. Smith, and Finney, Lee & Co. v. Steamboat Fayette, was based upon principles of public policy, and supported by legal analogies. In the latter case, the sale was made in Illinois, under a law somewhat similar to our statute."

In that case the court held that a sale of the boat under a judgment in a suit by attachment, in Louisiana, against the owners, "with privilege on the property attached," did not divest liens under the Missouri act, and the court goes on to say, "the doctrines of the maritime law, in relation to judicial sales of libelled vessels, are an exception to general principles. The exception is founded not only on principles of public policy, but is entirely consistent with the most rigid justice. Such sales are not made for the benefit of any particular creditor, but for the benefit of all persons interested. Provision is made for the distribution of the proceeds, *pro rata*, among all who will come forward and establish their claims within a specified time. The proceeding is entirely *in rem*, and all the world are bound by it. But what analogy is there between such a sale as this and an ordinary sale under an ordinary execution? Such executions are solely for the benefit of the party plaintiff, and can only operate upon the title of the party defendant. A sale under these merely conveys the title of the defendant in the execution. The liens of strangers are not divested. If it were so, their rights must be divested by a proceeding to which they are not parties, of which they have no notice,

and in the benefit of which they could not participate if they did have notice.

"We do not understand, therefore, that the prior decisions of this court are designed to embrace all judicial sales, but only such as are made here or elsewhere, under proceedings analogous to those of courts of admiralty, in which any number of claimants may unite in libelling a vessel, and in the benefits of which not only these claimants, but all others who choose, may participate."

So much of this opinion has been quoted to show how the court regards its previous decisions.

This court has also, in repeated cases, decided that the Missouri boat law has no extraterritorial operation, and that its benefits are confined to persons in Missouri, or making contracts in Missouri. Now, also, the statute declares the effect of a sale under the Missouri law to be to divest only the liens under that law. It has no effect to divest a lien in Illinois, if such there be. It lacks, therefore, essential ingredients of analogy to a sale under proceedings in a court of admiralty.

The Missouri law thus no longer creating liens analogous to maritime liens, public policy no longer requires the Missouri courts to give judicial sales made under the authority of other State courts enforcing liens under laws similar to those of Missouri, the effect of judicial sales ordered by courts of admiralty for the enforcement of maritime liens.

Inter-state comity does not require Illinois to enforce the Missouri lien law, nor Missouri to enforce the Illinois laws. McAllister is recognized as the purchaser of the boat under the Illinois laws; but he acquires no greater right, so far as Missouri lienholders are concerned, than if he had bought the boat at private sale, or at an ordinary judicial sale under an ordinary execution. His purchase does not divest the liens which can be enforced by the Missouri courts, when the boat returns within their jurisdiction.

The Federal courts have exclusive jurisdiction in admiralty and maritime matters. The sale, therefore, under the

authority of a court of the State of Illinois, whatever may be its declared jurisdiction, cannot be a sale under proceedings in admiralty, and the laws of Missouri and public policy do not now require that we should give it the effect of such a sale.

As McAllister's purchase could not divest the Missouri liens, it is not necessary to examine the other questions presented in the record.

Judgment affirmed. Judges Bay and Dryden concur.